## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JOSHUA NOWACZYK,**                                   **CASE NO.**

> **Plaintiff,**

**v.**

**AMERICAN GLASS**
**PROFESSIONALS, LLC,**

> **Defendant.**

_____/

## COMPLAINT

Plaintiff, JOSHUA NOWACZYK, hereby sues Defendant, AMERICAN GLASS PROFESSIONAL, LLC, and alleges:

## JURISDICTION

1.     This is an action brought under the Americans with Disabilities Act (ADA), codified at 42 U.S.C. § 12101, et seq., and under the Florida Civil Rights Act (FCRA), codified at Chapter 760, Florida Statutes. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights claim jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

3.    At all times pertinent hereto, Plaintiff, JOSHUA NOWACZYK, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of his disability and because he reported unlawful employment practices and has been retaliated against thereafter.

4.    At all times pertinent hereto, Defendant, AMERICAN GLASS PROFESSIONAL, LLC, has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.    Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6.    Plaintiff began his employment with Defendant on December 12, 2022 and, at all times pertinent to this action, worked as Defendant's Fleet Director and Safety Operations at Defendant's facility in Tampa, Florida.

7.    Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his disability

2

Plaintiff was subjected to a hostile working environment throughout his employment and was retaliated against after reporting this discrimination.

8.    Plaintiff was an excellent employee who played an instrumental role in helping build the company's structure and expanding operations into five states. His position required establishing safety compliance, fleet logistics, and operational systems within the company's Paylocity-based infrastructure.

9.    Carl Goss was hired approximately two months after Plaintiff and became Plaintiff's direct supervisor on or about June 2023, serving as Operations Supervisor. Pursuant to Paylocity's reporting structure, Plaintiff began reporting to Goss around that time.

10.    Plaintiff trained Goss in the company's operations model, procedures, and compliance systems. Following his training, Goss frequently relied on Plaintiff to perform substantial portions of his job responsibilities.

11.    On or about June 26, 2023, Goss became inebriated during a work-related lunch, consuming approximately five or six beers, and publicly shamed Plaintiff for refusing to drink due to company policy—calling Plaintiff a "goody goody." This incident marked the beginning of an ongoing pattern of harassment.

12.    Following that event, Goss engaged in frequent, demeaning, and humiliating behavior toward Plaintiff, targeting his weight, perspiration, and positive demeanor.[1]

13.    Goss's harassment included statements such as, *"How can such a big guy always move so fast?"*, *"Man, I knew big guys sweat, but you get drenched,"* and *"You'd think you'd lose weight by how much you sweat."*

14.    On multiple occasions, Goss intentionally sent Plaintiff to perform unnecessary physical tasks, such as running downstairs to handle falsified emergency duties Goss had called him for, only to be ridiculed by Goss after attempting to complete the task.

15.     What seemed to be urgent messages for Plaintiff's assistance, were really opportunities to haze Plaintiff, created by Goss who enjoyed remarking publicly about Plaintiff's weight. Specifically, Goss made comments like *"Look at this fat ass with his sweaty tits,"* and laughed in front of subordinates, intentionally humiliating Plaintiff.

16.    Goss's harassment and interference occurred on a weekly basis and created an ongoing hostile work environment. Goss even ridiculed Plaintiff's

---

[1] At the time, Plaintiff weighed approximately 350 lbs.

company shirts stating "next time I go get shirts embroidered I can take you with me to get some that actually fit."

17.    In October of 2023, Goss took the ridicule about Plaintiff's breast to a physical crescendo by offensively touching Plaintiff's breast and remarking about his nipples.

18.    In 2024, Goss also made repeated, unwanted phone calls to Plaintiff after business hours, including drunken and incoherent calls, some of which were silent, while others consisted of unintelligible rambling.

19.    When Plaintiff told Goss that after-hours calls were unwelcome because he was spending time with his family, Goss responded with sarcastic and mocking comments such as, *"What, you taking your kids to go exercise?"*

20.    Goss also ordered Plaintiff, on an approximately monthly basis, to return to Defendant's facility to perform pointless tasks such as check door locks, confirm keys were in a lockboxes, or verify whether a laptop was in place. These request were pointless because Plaintiff—when he got such calls—could readily ascertain that Goss was again inebriated.

21.    In July 2024, Plaintiff reported to Luis Lopez (Vice President of Technology) and Jim White (Chief Operating Officer) via email that he was experiencing a hostile working environment under Goss.

22.    Following Plaintiff's reporting, management issued contradictory communications—initially commending Plaintiff for raising concerns, then later blaming him for causing company turmoil and hindering a planned business sale.

23.    Despite this report, AGP failed to implement corrective action, and Goss's harassment continued unabated.

24.    As the conduct intensified, Plaintiff was forced to relocate his office multiple times (six times in total) to escape Goss's harassment and maintain his productivity.

25.    Each time Plaintiff moved, Goss either insisted Plaintiff return closer to his office then increased his hostility until Plaintiff was again compelled to move.

26.    In an effort to remain professional and avoid confrontation, Plaintiff maintained his positive demeanor and continued to lead his department effectively.

27.    Goss turned up his harassment when he made comments linking Plaintiff's perspiration to drug use. On December 20, 2024, he asked Plaintiff, *"You move fast for a big guy — you sweat a lot, are you on drugs?"* These particular remarks served as the final catalyst prompting Plaintiff to make a formal complaint.

28.    At the time of these comments, Plaintiff was performing his duties as directed, moving quickly and perspiring from exertion as he hustled to make the last call for mail. Goss called him into his office, mocked his sweating, and suggested drug use, eliciting laughter from others.

6

29.    That same day, Plaintiff complained to Luis Lopez and subsequently to Jim White, detailing Goss's ongoing harassment and the drug-use accusation. Plaintiff was told that an investigation would occur and was permitted to work from home while management reviewed the matter.

30.    On or about January 2, 2025, Plaintiff memorialized this complaint in writing documenting the pattern of harassment and management's prior inaction.

31.    No meaningful investigation was ever conducted, and Goss faced no discipline for his behavior.

32.    Instead, on January 10, 2025, Plaintiff was terminated during a conference call attended by Jim White, Lynn McClaren (Human Resources), Ashley Bishop (Human Resources), Luis Lopez, and William Blodgett (Human Resources). During the meeting, Blodgett laughed and remarked, *"What did you expect, that we'd fire Carl?"*

33.    Management informed Plaintiff that his termination was for insubordination for missing a meeting, despite Plaintiff's prior authorization to work remotely during that same period as part of the supposed "investigation." Notably, Plaintiff was lured to his own termination under the guise that it was to discuss aforementioned complaint.

34.    Plaintiff found the termination illogical and retaliatory, particularly because only three months earlier, he had received a perfect performance review from Goss, accompanied by a significant raise for his leadership and contributions.

35.    At the time of termination, Plaintiff was also expecting to receive company shares and ownership interest, which he had relied upon when purchasing a home. AGP terminated him without severance, without awarding the promised shares, and without performing a legitimate investigation.

36.    Similarly situated comparators outside Plaintiff's protected class and who did not participate in protected activity were treated more favorably.

37.    Similarly situated employees who engaged in protected activity were also subjected to retaliatory termination, while others who engaged in far more severe misconduct were retained.

38.    Karissa Santiago-Rodriguez, an employee in Human Resources, was terminated later in January 2025, shortly after voicing opposition to the company's decision to terminate Plaintiff and questioning the legitimacy of management's stated rationale. Santiago-Rodriguez's discharge occurred less than one month after Plaintiff's own termination, evidencing a continued pattern of retaliatory conduct against employees who opposed or questioned discrimination and retaliation within the organization.

39.    In contrast, Kier Moore, a Co-Operations Supervisor who routinely engaged in insubordination—including yelling and cursing at Goss in front of subordinates and peers—was never reprimanded or terminated for such conduct. Moore remained employed throughout Plaintiff's tenure and beyond, despite his repeated defiance of management directives.

40.    The disparate treatment as highlighted by the difference between Plaintiff and Santiago-Rodriguez' treatment and that of Moore further demonstrates that Defendant's asserted reason for Plaintiff's termination—"insubordination"—was pretextual, and that the true motive for Plaintiff's discharge was retaliation for his protected complaints of harassment and hostile work environment.

41.    Plaintiff's termination occurred in direct retaliation for his protected activity in reporting harassment, discrimination, and a hostile work environment.

42.    As a direct result of Defendant's unlawful actions, Plaintiff suffered lost income, benefits, and professional opportunities, along with emotional distress, humiliation, and financial hardship, including difficulty maintaining his mortgage and the need to accept substantially lower-paying employment.

43.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## ADA HOSTILE WORK ENVIRONMENT

44.     Paragraphs 1 through 43 are re-alleged and incorporated herein by reference.

45.     This is an action against Defendant for creating and refusing to correct a hostile work environment within its organization based upon disability/perceived disability and retaliation. This count is brought pursuant to the ADA/ADEA.

46.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's disability/perceived as disability and was thereafter subject to retaliation as described above.

47.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

48.     Furthermore, Defendant knowingly condoned and ratified the hostile work environment as more fully set forth above.

49.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

10

50.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a disability/perceived as disability and/or retaliatory nature and in violation of the laws set forth herein.

51.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's unlawful termination and the other actions set forth above.

52.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability/perceived as disability and/or retaliation in violation of the ADA/ADEA.

53.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.   Plaintiff is entitled to injunctive/equitable relief and punitive damages under this count.

## COUNT II
## ADA DISABILITY DISCRIMINATION

54.    Paragraphs 1 through 43 above are re-alleged and incorporated herein.

11

55.     This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq.

56.     Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

57.     Defendant is liable for the differential treatment which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

58.     Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

59.     In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

60.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

61.    Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

62.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

## COUNT III
## ADA RETALIATION

63.    Paragraphs 1 through 43 above are re-alleged and incorporated.

64.    Defendant is an employer as that term is used under the applicable statutes referenced above.

65.    This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203.

66.    Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under 42 U.S.C. §12101, et seq. and adverse employment actions were then taken against Plaintiff.

67.    Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq or encouraging another to do so.

68.    The foregoing unlawful actions by Defendant were purposeful.

69.    Because of Plaintiff's reporting or association with another who reported Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's termination.

70.    Plaintiff is a member of a protected class for reporting Defendant's unlawful employment practices or association with another who reported Defendant's unlawful employment practices, and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

71.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss

of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

**COUNT IV**
**FCRA HOSTILE WORK ENVIRONMENT**

72.    Paragraphs 1 through 43 are re-alleged and incorporated herein by reference.

73.    This is an action against Defendant for creating and refusing to correct a hostile work environment within its organization based upon disability/perceived disability and retaliation. This count is brought pursuant to the FCRA.

74.    Plaintiff has been the victim of discrimination on the basis of Plaintiff's disability/perceived as disability and was thereafter subject to retaliation as described above.

75.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

76.    Furthermore, Defendant knowingly condoned and ratified the hostile work environment as more fully set forth above.

77.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

78.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a disability/perceived as disability and/or retaliatory nature and in violation of the laws set forth herein.

79.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's unlawful termination and the other actions set forth above.

80.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability/perceived as disability and/or retaliation in violation of the FCRA.

81.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent

and continuing. Plaintiff is entitled to injunctive/equitable relief and punitive damages under this count.

## COUNT V
## FCRA DISABILITY DISCRIMINATION

82.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

83.     This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

84.     Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

85.     Defendant is liable for the differential treatment and its refusal to accommodate    Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

17

86.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

87.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

88.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or her record of having an impairment under Americans with Disabilities Act.

89.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT VI
## <u>FCRA RETALIATION</u>

90.    Paragraphs 1 through 43 are realleged and incorporated herein by reference.

91.    Defendant is an employer as that term is used under the applicable statutes referenced above.

92.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under Chapter 760, Florida Statutes, and other statutory provisions cited herein.

93.    The foregoing unlawful actions by Defendant were purposeful.

94.    Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

95.    Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

96.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss

19

of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

20

(e)    enter judgment against Defendant and for Plaintiff awarding

Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the

circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/ Brandon E. Meeks
Brandon E. Meeks [FBN 1068353]
THE MEEKS LAW FIRM PLLC
1446 MARION AVENUE
TALLAHASSEE, FLORIDA 32303
Telephone: (850) 688-8396
Brandon@TheMeeksLawFirm.com

ATTORNEY FOR PLAINTIFF